# Carson's Appeal.

| 99 | 325 |
| 143 | 224 |
| 99 | 325 |
| 147 | 231 |
| 99 | 325 |
| 180 | 520 |
| 99 | 325 |
| 190 | 181 |

1. The terms of the Act of April 18th 1853, § 9, Pamph. L. 503, in relation to accumulations, render invalid a direction by a settlor or testator that accumulations shall be capitalized and the interest thereon paid to the beneficiary after he has attained majority. Such accumulations belong absolutely to the beneficiary when he comes of age.

2. Washington's estate, 25 P. F. Smith 102; Stille's estate, 4 W. N. C. 42; and McKee's appeal, 15 Norris 277, followed.

3. It can make no difference as to the disposition of such accumulations whether they accrued prior to the death of the settlor or after that event.

January 10th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas No. 2, of *Philadelphia county:* In Equity: Of January Term 1881, No. 154.

Appeal of James W. Carson and W. W. Keefer, trustees, from a decree of said court directing the payment by them of certain accumulated income to Mrs. Ella V. Rutter, the cestui que trust under a deed of trust.

The bill in equity, filed by John R. Rutter and Ella V. Rutter, his wife, formerly Ella V. Baird, in her right, against James W. Carson and W. W. Keefer, trustees, set forth as follows:

On April 12th 1866, Matthew Baird, by an indenture of that date, assigned and transferred to the defendants certain securities, exceeding in value $500,000, in trust for his three sons and his three daughters, of whom the complainant Ella is one, in equal sixth shares, in manner following, viz.: as to his sons, as therein set forth; and as to his daughters, in trust "to invest, and keep invested, the remaining three full equal sixth parts of the stocks, loans, personal effects and securities, hereby granted and assigned; and to pay and apply the interest, income, dividends and profits thereof, to the support, maintenance or education of Ella V. Baird, Mary L. Baird and Florence A. Baird, daughters of the said Matthew Baird, for their sole and separate use, until they respectively attain the age of twenty-one years, or marry, or if, in the opinion and discretion of said trustees, said interests, income and dividend, or any portion thereof, shall not be needed for this purpose, then to re-invest the same, from time to time, together with any portion of the principal of the estate and property hereby granted and assigned, which they may change and replace in the securities before mentioned; and from and after the marriage of said daughters respectively, or their arrival at the age of twenty-one years,

[Carson's Appeal.]

whichever event shall first happen with each of them, then, *in trust*, to pay the dividend, interest and income of one full equal third part of said three-sixth of said stocks, loans and securities, together with the accumulations of income, which shall have been invested, as the same shall be received, unto Ella V., Mary L. and Florence A. Baird, respectively, for their respective sole and separate use, upon their separate receipts, without the control or interference of any husband or husbands they may have or take, and without being subject or liable to his or their debts, contracts or engagememts, for and during all the term of the natural lives of said daughters respectively, and from and immediately after the decease of either, any, or all of said daughters, then, in trust, to and for the only proper use and behoof of such persons and for such estates, as the said Ella V., Mary L. and Florence A. Baird, respectively, by their respective last wills and testaments, to be signed by them, respectively, in the presence of two credible witnesses, shall direct, limit and appoint, or in default of such will and appointment, then, in trust, to and for the only proper use and behoof of all and every the child and children of said daughters that shall then be living, and the lawful issue of such of them as may then be deceased, their respective heirs, executors, administrators and assigns, forever, in equal shares, but so, however, that such issue shall take and receive only such part or share of his, her, or their deceased parent would have taken if living, and in default of such child or children and issue thereof, then in trust to and for the use and behoof of tho heirs and legal representatives of such daughters respectively."

Matthew Baird, having a large other estate, maintained his children from the date of the deed of trust, in 1866, until his death, in May 1877, by reason whereof nearly all the income of the complainant Ella's share was accumulated by the trustees, the same now amounting to over $100,000.

The complainant, Ella, arrived at the age of twenty-one years August 14th 1877 and was married to John R. Rutter in January 1878.

The bill prayed for a decree that the trustees pay and transfer to her absolutely the said accumulations of income from her trust estate, from the beginning of the trust to the date of her arrival of age.

The defendants filed a plea to the bill, averring "that the said Matthew Baird upon and at the time of his directing the drawing of the said deed of trust, and execution thereof, declared his intention and purpose thereby to be that the accumulations of the income of the shares of his daughters, until they should be twenty-one years old or marry, respectively should not, upon their arrival at the age of twenty-one years of age or

marriage, respectively, be paid by the said trustees to them respectively, absolutely, but should remain in said trustees' hands during his said daughters' lives respectively, in trust to pay to them, respectively, the income only of said accumulations, and that the said Matthew Baird so declared his said intention and purpose to the said W. W. Keefer."

The court, after argument, entered a decree overruling the defendants' plea, and directing the defendants to pay and transfer to the complainant, Mrs. Rutter, all the said accumulations of income accrued prior and up to the time of her majority, and the securities wherein the same were invested.

The defendants thereupon took this appeal, assigning for error the said decree.

*George L. Crawford*, for the appellants.—We contend (1) That the proper construction of the deed of trust, shows that the settlor's *intention* was that the surplus accumulations of income of Mrs. Rutter's share during her minority, should be added to her principal, and be subject to the trust thereof, for her for life, and upon her death, for her appointees by will, or her issue. (2) That if such is not the construction of the words of the deed, it was Mr. Baird's *actual* intention, declared at the time, as averred in the plea, and admitted in disposing of the case on bill and plea, according to which the deed should be reformed. (3) The Act of April 18th 1853, does not invalidate that disposition of her income during her minority. The Act does not prohibit such accumulations being capitalized with the original capital, and the income only of the whole, to be given to her upon and after majority.

The Thelusson Act prohibits trusts for accumulation of income, except for four different terms, which are in the disjunctive, and cannot be cumulated: (1) during the grantor's life, or (2) for twenty-one years from his death, or (3) during the minority of any person living at his death, or in ventre sa mere, or (4) during the minority of any person, who, under the trust, would, for the time being, if of full age, be entitled to the income directed to be accumulated.

The Pennsylvania Act has abridged the right of accumulation somewhat less than the English Act, by adopting its first and fourth terms, cumulated by allowing accumulation during both periods, instead of either period.

The trust, as to the accumulations here, is within the exceptions to the prohibition of the Act of 1853. Mrs. Rutter and Mr. Baird, being both in existence at the creation of the trust, the term for accumulation—during her minority—is necessarily within the period comprised by the life of the grantor, and twenty-one years thereafter. The thing prohibited by the Act

[Carson's Appeal.]

is the accumulating of income beyond a certain term, not the donor's free disposition of the income accumulated within a permitted term.    Such is the construction of the similar phrase in the Thelusson Act, and also under a similar statute in New York: Meserole *v.* Meserole, 1 Hun 66.    To require that the accumulations during minority shall be paid over to the beneficiary, absolutely, at majority, destroys the force of the subjunctive mood, " would, for the time being, if of full age, be entitled," etc.; and adds to the prohibitions of the Act.    If the Act wholly prohibits the giving of accumulations to anyone else than the minor, then a gift over in case of the death of a minor during minority would be impossible.

The only Pennsylvania cases touching the question are the recent ones of Washington's Estate, 25 P. F. Smith 102—which was really a case of allowance to minors, covered by the second clause of the act; Stillé's Estate, 1 W. N. C. 249; 32 Leg. Intell. 74; Stillé's Appeal, 4 W. N. C. 42—in which the court, without hearing argument, followed Washington's Estate; Sergeant's Estate, 32 Leg. Intell. 29 ; and Howell's Estate, 5 W. N. C. 430—both decisions of the Orphans' Court, following Washington's Estate; and McKee's Appeal, 15 Norris 277. This is practically the first time the precise question here raised has ever come fairly before the court.   No policy of the law requires a donor to give the accumulated income of a minor to him, upon arriving at age, the period when most likely to be injurious to him, while its capitalization, and the income thereof, would be most likely to be beneficial to him ; on the contrary, the same policy of the law which favors accumulations during minority, repels the compulsory subjection of them to the free control of the minor when just of age.

The direction for accumulation during the settlor's life is unquestionably valid, and Mrs. Rutter therefore cannot be entitled to those, even if she is entitled to accumulations after Mr. Baird's death.

*C. W. McKeehan*, for the appellees, relied upon Washington's Estate, and the subsequent Pennsylvania cases, cited in the argument of counsel for appellant.

Mr. Justice Trunkey delivered the following opinion, February 6th 1882.

In Washington's Estate, 75 Pa. St. 102, it was decided that so much of the will as directed that the accumulations of the estate of the testator, during the minority of his only child, upon her arrival at full age should form a part of his estate, and thereafter the income of the estate to be paid to said child during her life, was in conflict with the Act of April 18th 1853, and that

said accumulations, by virtue of the statute, vested in and were payable to the child at her majority. The petition averred that when the minor should become of age she would be entitled to the whole of the accumulations, which the answer denied, and asserted that they did not belong to the minor, but to the remaindermen. Upon this issue the cause was heard. As shown by the printed argument the counsel for the appellant declared at the outset that but one question of law was involved, namely, "Did the court below rightly decide, that, in order to justify an accumulation under the Act of April 18th 1853, the income directed to be accumulated during a minority must be given to the minor upon his attaining his majority, otherwise the direction is an excess?" Both the master and the court below elaborately considered the points now raised, and reviewed the English decisions under the Thelusson Act, and the American cases under similar statutes. Possibly the cause might have been decided the same way upon another point, but it was not, for no other was considered by the court below or this court.

It is conceded, that the point in question in the present case directly arose in Stillé's Estate, 4 W. N. C. 42, and was decided without argument, on the authority of Washington's Estate. Upon the same authority the recent case of McKee's Appeal, 96 Pa. St. 277, was determined, and if it be true that the case could have been so decided on other grounds, such other ground was not noted.

Washington's Estate is the first reported case adjudicated under the Act of 1853, and ever since it has controlled the disposition of such cases of accumulations. The opinion in the Orphans' Court was delivered by Justice PAXSON, who was then one of the judges thereof, in which he said, " It is difficult to see the wisdom of any act which requires, in a large estate, the accumulated income of a minor to be paid to him, in all cases, upon his arrival at full age. There are many instances where such a thing would be injurious to him in the highest degree. The capitalization of the income, and the payment to him only of the interest after his majority, would often promote his best good. There would seem to be no reason of public policy demanding such a change in the right of disposing of property. And I desire to call the attention of the profession to the fact that our Act does not, as the Thelusson Act does, allow accumulation for the purpose of the payment debts, or to provide for raising portions for children.' 8 Phil. R. 182. Time enough has elapsed for legislative correction, if the intendment of the statute has been misapprehended by the courts. The ingenious argument for the appellants is convincing that much may be said favorable to the opposite construction, and that the intendment is not so clear as to preclude doubt; but we are not con-

[Waln *v.* Philadelphia, to use of Armstrong.]

vinced that the repeated and uniform decisions upon the very question now presented should be overruled.   Stare decisis.

Decree affirmed, and appeal dismissed at the costs of appellants.

The appellants subsequently presented an application praying for a rehearing and a modification of the decree as to that portion of the fund derived from accumulations of income between the date of the creation of the trust and the date of Matthew Baird's death, the appellants contending that Mrs. Rutter was not entitled thereto; and citing 1 Jarman on Wills, *306; Hays and Jarman's Precedents 351; Theobald on Wills 305; McKee's Appeal, 28 Pitts. Leg. Jour. (O. S.) 371; s. c., 15 Norris 277.

Mr. Justice TRUNKEY delivered the opinion of the court, February 27th 1882.

This deed contains no direction for accumulation during the grantor's life.   It vests the property in the trustees, for use of certain persons, with directions for accumulation during their minority.   After its delivery the grantor had no interest in, or power to control, the estate.   The Act of 1853 applies to an estate held under a deed, just as it would if held upon the same terms under a will.   In either case directions for accumulations are void so far as in conflict with the statute, and it can make no difference whether such accumulations, when the property passed by deed, accrued within the lifetime of the grantor, or after his decease.   The authorities cited by the appellants relate to cases where the trusts were created by will, and show no distinction between them and like trusts created by deed, as respects the question presented in the prayer for a modification of the decree.

Motion for rehearing refused.